Case number 23-1077, consolidated with 23-2376, Jasmine Sabagala and Abolition Coalition versus Helen Levinson and Niles Township Accountability Coalition. Good afternoon. My name is Sanjay Taylor. I'm the presiding judge, you know, justice of the district for the 6th Division of the 1st District Appellate Court. I'm joined this afternoon by my colleagues in the 6th Division, Justice Michael Hyman and Justice Celia Gamrath. If I can ask the council to introduce themselves and starting with the appellant, please let me know how much of your 20 minutes you would like to reserve for rebuttal. Certainly, Your Honor. Cheryl Weichel for the plaintiffs and the appellants, and we would like to reserve five minutes for rebuttal, please, Your Honor. Okay, thank you. And for the appellees. Good afternoon. This is begin with you, Attorney Weichel, on behalf of the appellants. Thank you, Your Honors, and good afternoon once again, and may it please the court. I know from experience in Chancery that you will have read the briefs, so I'm not going to rehash that. I do want to make three primary points before Your Honors today. First, that the court below didn't just get the law wrong. The court below got basic facts wrong about this case that essentially cast the entire process, everything that happened after those basic factual errors, basically rendered the entire process unlawful from the beginning. Second, the court below did not apply the Citizens Participation Act correctly, even if those factual errors had not occurred. And third, the court made a final error of law by not granting the plaintiff an evidentiary hearing on the issue of attorney fees, even ignoring those other factual and legal errors. I'd like to begin by pointing out that the result that we are challenging today is a perversion of the Citizens Participation Act. The purpose of the statute is to protect free speech. But what happened here was that a speaker got punished for bringing a meritorious lawsuit for defamation. Now, there's a couple of reasons for that. Number one, because the court below repeatedly made a major error of fact, repeatedly referring to my client as a member of the elected school board, not just once, not just twice, but on three separate occasions. So, for example, on page 160 of the record, in the one paragraph analysis that the court below conducted under the CPA, that was the entire analysis, one paragraph, the court below states, the court further notes that disputes between school board members, like the disputes here, routinely fall subject to this act. That was dismissing the first complaint. And then, in dismissing the first amended complaint, the court below cited its previous ruling. The court further noted that disputes between school board members, like the dispute here, routinely fall subject to this act. The court finds that its prior analysis still applies. And that is on page 292 of the record. In other words... Did you bring this before the court, that this error of fact? We did, your honor. We mentioned it. We pleaded both on paragraph five of our first complaint. Well, I'm not saying I understand in your complaint, but you're saying that judge misunderstood the facts, okay? And that's with regard to what we're talking about, these is, you're saying that the judge made a mistake as to what you pled, and that this is not a member of a school board involved here, neither parties. And I'm asking you, did you bring that to the attention of the court? We did, your honor. In fact, in our opposition to the motion to dismiss the first amended complaint on page 270 of the record, we specifically noted, again, that the plaintiff is a teacher and is not elected. All right, but what about after May 16th, 2023, when the court ruled? We did, your honor, in the briefing on the issue of attorney fees. We brought that up again. And what did the judge, is there anything in the record as to what the judge said in response? The court did not address it at that time. At that point, we had already filed our notice of appeal, and the court did not address it at that time. But we did raise that, your honor. The court below opted not to have oral argument on either motion to dismiss. That was the court's prerogative. But the problem is the court made this error of fact over and over again. We pleaded it clearly in both complaints, and we argued that in our opposition to both motions to dismiss, that my is not an elected school board member. So, Ms. White, I saw that certainly in the court's May 16th, 2023 order, where it says disputes between school board members, like disputes here, routinely fall subject to the act. But having said that, that passing reference to it, does it really make a difference? What difference does it make? Because here, your client is, in fact, a public school teacher and a member of government, right? So we have lots of allegations throughout this letter and throughout the record that involves school board meetings, school board participants. Is that the crux of the argument here? I don't see that it makes much of a difference. I would argue, your honor, that it makes a significant difference for two reasons. Number one, the court's entire CPA analysis was one paragraph applying no case law in the original dismissal, and then essentially repeating that in the second one. Second, Sandholm, which was decided by the Illinois Supreme Court, was about a school teacher, on very similar facts to what we have here. And the court below, instead of applying Sandholm, applied a series of cases that predated Sandholm about elected officials. And I believe it changes significantly the analysis from an elected official who is, by definition, someone that you petition for a redress of grievances when you're dealing with a school teacher. And here is the crux of this matter, your honor. If you look at the letter itself, the letter begins with a demand to the plaintiff's human resources department, on page 183 of the record. And then it ends the same way, with another demand to the human resources department. And so if we are going to say that just by working for the government, the Citizens Participation Act applies, that would run afoul of what Sandholm held. Because Sandholm held that where you have someone like a school teacher, the CPA doesn't apply automatically because they're a public employee. Instead, it only applies where the complaint is brought solely for the purpose of stifling the speech of the defendant. And that's not what happened here. And Sandholm is very clear on that. We cited Sandholm in our oppositions to both motions to dismiss, and the court below never even mentioned Sandholm in either of its rulings. So, rest assured, we will use the correct law. We will use the current law and analyze the case. But I would say your client is not supposed to be a teacher. Your client is a public school teacher. She is, in fact, part of government. She's funded by the government. The school is funded by the government. She's entitled to government benefits. So, from that standpoint, it's not, you know, a lot of your argument, particularly in your reply, talks about not being a public official, not being a politician. I don't think she needs to be under this analysis. The question is government. What's this letter designed for an act of government? In other words, bringing it to the attention of the governmental body that governs your client's profession to take action based on defendant's belief that something was not going on properly within the classroom. Respectfully, Your Honor, I think that's not what Sandholm says. Sandholm states that in order to be a slap suit subject to dismissal, based on, relates to, or in response to must mean solely based on, relating to, or in response to an act or act of the moving party in furtherance of the moving party's rights of petition, speech association, or to otherwise participate in government. And the reason that matters is in Sandholm, the plaintiff, who was a teacher, a public school teacher, just like my client, was suing for defamation, very similar causes of action here. And the Illinois Supreme Court said that the CPA did not bar that action. And so I think the fact that there, and in Sandholm, the Illinois Supreme Court did make the distinction between elected officials and public school teachers. And I think that distinction is important because otherwise you end up in a situation where you can essentially make false statements about any government employee, and they are insulated from liability simply because they are a government employee. Sure, I understand your argument. And let me know if I'm characterizing. I think your argument is that under the Citizens Participation Act, unless you're an elected or appointed official that has policymaking responsibilities and duties, there's less protection available to a defendant where the plaintiff is not one of those individuals. Is that correct? That is part of our argument, Your Honor, and to put a finer point on it, let's assume, for example, that these statements were made by the janitor at the school. That's public employee. But I don't think anyone would say, well, you can't sue for defamation because you're a public employee. You're the janitor. At a certain point, simply saying public employment is enough to render any statement, no matter how defamatory, insulated from liability, is it doing exactly what the Supreme Court in Sandholm said we're not doing. And again, Sandholm was about a public school teacher. Sandholm was specifically about the same situation that we have here. And instead of complying with Sandholm, the following case... I mean, Sandholm doesn't really specifically address that issue that you're raising here, right? It does, Your Honor. Sandholm was about a public school teacher. So does Sandholm say that the protection available under the Citizens Participation Act depends upon what kind of plaintiff you have? It says that it depends on the intent of the plaintiff in bringing the action, and that if the action is based on a bona fide claim, if there is an actual injury, then it's not solely brought to silence the defense. Illinois Supreme Court says it is the final word from the Illinois Supreme Court on that point. I'd argue that... Why don't you move on to your next point? But I just want to ask, your point is extremely important, because you just made the point of what Sandholm stands for. And I think the question is, the intent is, is somebody's right to petition being interfered with? That's the key question. There's nothing in the act that would allow anyone free reign to defame, harass anyone else. I mean, that's not what the SLAPP Act is about. Am I right? Yes, Your Honor. It's about how that you have a right to petition, and if you are using a lawsuit to prohibit somebody's petition, that's why the intent comes in, right?  So we're not... The fact that this is a public employee is less important, whether she is or isn't. She works for a government because it's a school, but that is not the crux of a SLAPP claim. Am I right? That is absolutely correct, Your Honor. And in fact, Sandholm made that point over and over again. And even the three-part Garrido test is about the same thing. So the issue here is that nothing the plaintiff did here prevented Ms. Levinson from going and talking to the school board, from contacting the school board. The issue here is not the school board. It's that she's going to the human resources department of the school and saying, take action against this person. And this goes into what Justice Taylor just said. So let's go to the next step. And I would like you to clarify for me, when we go into the next step, your complaint, the amended complaint, states that paragraph... I don't know if you got it here, but it says about being a per se claim, right? In the complaint, you talk about per se claim. And then in your brief, you talk about a per quad claim and per se. What are we to make out of your paragraph 75, which says, in Illinois, falsely accusing a person of an unlawful act is per se defamatory and damages are presumed. Which is it? Are you doing one or the other? We pleaded both, Your Honor. I think that we pleaded both. And if there was... Okay. You pleaded both. Okay. So you pleaded both. But there's a different standard. Yes, Your Honor. If you pleaded both, then how are we to... Then we have to go through each of your allegations of what was said. And to be per se, it's got to be very particular, right? Particularity is really important because it's a per se rule. So if we do that, where does that get us? For example, child abuser and committing child abuse. Where is that anywhere in anything that you provided in the record? Your Honor, we attached the letter that was sent. We also... Where is the allegation of child abuser? Where does that sit? You have it in quotation marks, being a child abuser and committing child abuse. Those were in some of the social media posts, Your Honor. What? Those were in some of the social media posts. Which social media posts? I mean, it was sent in a social media post. Yes. Those were in some of the social media posts that we mentioned before. Which one? I mean, are we supposed to go hunting and picking through this? Is that our job? Of course it is not, Your Honor. However... Where is it? Which one? There's several attachments. It is in the social media post, Your Honor, that we pleaded in the complaint. We did notice, we did allege that prior to sending the letter, and we did put this through on pages 172 through 174 of the record, we did note that there were several social media posts that were made by Ms. Levinson about my client long before the letter had been sent. So this was... Okay. I think there's a disconnect there. Are those social media posts in the record? They are in the record. Yes, Your Honor. Okay. But they're not attached to the complaint? They're in the complaint, Your Honor. They are attached to the complaint? They are in the complaint, Your Honor. Yes. Then tell me which one of these attachments uses the word child abuse or child abuser. I do not have that in front of me, Your Honor. I do know that we attached the Facebook post on pages 172 through 170, on pages... I have them in the complaint before me. I'm quoting from the defendant's brief too. The in the record that those words are used. Is that wrong? There were statements made on social media that did make... I understand. And you're saying we have them attached, but you can't point to anything. Well, we can go on. And if there is there, you could tell us on your rebuttal. I understand, Your Honor. And I appreciate that. I think the issue is that the innocent construction rule only applies to defamation per se. We pleaded both. And on the 619 motion, the fact that it's under the CPA does not change that defamation per quad is still a question of fact for the trier effect. But there's a difference. And one of those differences is you have to have actual damage. And she wasn't fired. She still has her job, from what I can tell in the record. How was she damaged? She ended up being placed essentially on a probationary period, Your Honor. Wait, wait, wait. Essentially, you said. Where in the record does it say she was placed? Your Honor, a principal came in to observe her in her classroom. I'm asking in the record, where does it say what you just said? I know that you have that in your complaint that she was looked at. It's in the complaint. How is that a damage? Teachers are often looked at. And even if this was innocently looked at, teachers are reviewed or observed frequently as part of their job. Yes, Your Honor. But if someone is coming in to watch you do your job in response to a specific false allegation or a specific complaint, that does damage your reputation. Or to put it another way. OK. But you have to have actual damages. The fact is, you don't have to prove what the amount is if it's per se. But per quad, it's a different situation. But we're also way before discovery, Your Honor. And we don't have to plead the numerical amount of damages at the pleading stage. And that's kind of where we are. This was not summary judgment. This was not after trial. There was no discovery because discovery was And so what we have essentially have is the court below pre-deciding all of these issues on a 619 motion instead of taking the facts alleged in the complaint to be true, which is what the standard is supposed to be. Can you point to the strongest defamatory statement that's alleged in the complaint from your perspective, whether it's defamation per se or defamation per quad? I would point to several, Your Honor, if you're looking at starting with the letter. And the letter is on pages 183 through 185. First of all, Ms. Levinson repeatedly accuses Ms. Sebagala of making false statements and of lying. For example, there are multiple statements in there that say that Ms. Sebagala urges the board to create a response to racist incidents. Yet we have no racist incidents reported. Further, her members continue to berate and falsely accuse innocent children in our community of egging and vandalism by kids outside our district just to fit their narrative. There are two paragraphs later. As a fourth grade teacher, how are white children in the classroom being treated? Let me just back up. The paragraph that you just read, it talks about her members. It doesn't point to your client specifically, correct? Your Honor, I would argue that since this is about her, this is a statement about her, and it does point to her specifically by talking about statements that my client supposedly made and then saying that these statements are essentially false. What this letter is doing is it is calling my client a liar. This client is saying that this client is discriminating against white students and lying to support a narrative. That brings me to Kumaran, which talks about the need that there is a precedent for disparaging the character of a teacher to be defamatory. The issue here is that you're making these statements for the purpose of someone's career. It cost my client a promotion. Where is that in the record? That's in the complaint, Your Honor. It's on the first page of both complaints that my client was cost of promotion as a result of this. Did you turn that into some kind of economic loss? Have you applied any damages as a result? Yes, Your Honor. That is one of the bases of our complaint. It's pleaded on the first page of both of our complaints. But again, we never got to that because there is no discovery. This was on the pleadings. All I'm saying is if we're going to end up dismissing this case saying, well, there is no evidence, you don't have to plead evidence in Illinois at the pleading stage. Sandholm still makes clear that even on the CPA, this is still a 619 motion. And the court below decided to skip to the end. For example, taking the affidavit that Ms. Levinson had saying, well, I never fundraised off this. The problem is, as we know from Doe versus University of Chicago Center, that's not appropriate for a motion to dismiss. Basically, what the court below did was grant summary judgment without a factual record. If we go through discovery and it is as Your Honors are saying, well, there's no damages, based on all of that, then certainly, yes, then at that point, summary judgment. But this was not a summary judgment motion. This was a 619 motion. And the problem is you cannot say no set of facts based on that. And I think I'm running out of time. So let me just ask you, you have the affidavit from defendants saying we never fundraised, we never solicited, you didn't respond to anything, you didn't provide anything. So a court on 619 can indeed decide easily decidable facts. And if that's the only evidence given, what was court to do? Actually, Your Honor, our complaint was verified. And so you cannot simply attach an affidavit and trump a verified complaint. Also, Dover's University of Chicago Medical Center says that on a 619, the complaint trumps the affidavit because extrinsic evidence is not permissible. And we did argue that both below and before this court. Except your complaint really does, you know, involve like these broad sweeping statements, no specificity, no link to show the fundraising or anything of that regard. Let me go back to your statement that you said you pled per quad. I didn't see that in any of your complaints. It says per se, you say it's a crime, and that's it. So now in your briefs, you argue it's per quad. How are we to get that or how is the trial court to understand that at the time the motion to dismiss was argued? Your Honor, we actually put in our response to the motion to dismiss below, and I did pull this out, that we were pleading both and that we were happy to replead if that was the court, if that was the decision to separate those out. I thought that we had made that clear, Your Honor. We did put in our response to the motion to dismiss that we were pleading both per se and per quad in our discussion of the innocent construction rule in our response to the motion to dismiss the first amended complaint. But again, then it shouldn't have been dismissed with prejudice if the allegations were still too broad, then we should have been given a chance to replead. Sorry, what would you do differently? Because this was your second complaint. What would you have done differently if given the opportunity? Well, Your Honor, then clearly based on... It really looked just like your first complaint. What I think we would have done, Your Honor, is based on what Your Honors are saying. We could have more explicitly stated, here's a per quad pleaded in the alternative to per se. As Your Honors are aware, there's no specific pleading rule that says we must write pleaded in the alternative, but I understand what Your Honors are saying. I also think that we could have included specifically, based on what Your Honors are saying, that this is the amount of money that my clients lost as a result of not being promoted. We could have put that in the complaint. I understand that. But we did plead that my client lost a promotion as a result of this. And so this is... I want to stop you here and we've gone well over your time, but we'll come back to you. I do apologize, Your Honor. Thank you. And Kareem. Good afternoon and may it please the court. My name is Soren Lehu and I represent the defendants in this case. On August 31st, 2021, Ms. Helen Levinson submitted a letter to public school officials detailing various concerns that she and others in the community had. She wrote this letter as a citizen and as a parent of a child in the school district. Let me ask you a question. When does contacting somebody's employer become defamation instead of free speech? Your Honor, I think the starting point here is to acknowledge that plaintiff is a public employee. No, she's a teacher. She's an employee of a school district. She's a teacher. So somebody has contacted a human rights or human relations person at the school and has made a statement. And so nobody has a right, you would agree, just to say anything they want about a teacher in writing to the school. Do you agree with that? Anything go? Do you agree? I agree with that. And that's where the San Home case is very instructive and where I think the other side gets it wrong. The San Home case stands for the proposition that a slap action is by definition a lax merit. So the CPA does not apply if the plaintiff files a lawsuit which has merit, if there's legitimate defamatory statements. The difference between the San Home case and this case is that case, the court said, there's some potential merit here. We're going to let this go forward. Let's say that there could be potential merit. They plead that she lost a motion. Some of these accusations have to do with defaming a teacher, a teacher being called anti-white in some of these other terms that are being used, that the teacher segregated students and so forth. Let's just take the full broad accusations. Let's get away from the act. I'm more concerned about whether it is possible that a parent or a member of the community can defame a teacher. Of course, it's possible. You say it's not here. I understand that. Right. Okay. I understand. So what would it be if indeed there were consequences as a result of that letter, for example, losing a promotion? That can be proven. Wouldn't that prove damages here? Well, Your Honor, you have to take the analysis one step at a time. First, you have to show that there's liability before you even get the damages. If my client did not say anything defamatory... Well, we have the letter. It's attached to the complaint. Your client says Ms. Sebagala segregates District 72 by skin color. If you look at the context of that... Why is that not defamatory? You say look at the context, but she's effectively accusing this teacher of being a segregationist. That's not what the letter says. I'm telling you what it says. It says Ms. Sebagala segregates District 72 by skin color. And the sentence before that discusses a mindset of division in the community. It's not saying that she's literally a segregationist. It's saying that there's unnecessary division in the community when she makes certain comments. The letter says that she urged the school board to hire more teachers of color. Yes. My client, in response, says that's perfectly fine. It's right there in the letter. No, but she accuses her of being a segregationist. Again, respectively, I don't think that's what the letter says. Well, I'll clarify. She says Ms. Sebagala segregates District 72 by skin color. And if you look at the context, it's saying there's division created here in the community that is not helping anyone, and we shouldn't be divided over each other's skin color. Now, even if, let me say this, even if, worst case scenario, she said you are a segregationist, that is not a basis for a defamation claim anyway. It would merely be a statement of opinion. I mean, there's case law that says statements that say you are racist is not defamatory. But let's take what's actually said in the letter. She calls out the plaintiff with the anti-white hate speech that she, she meaning the plaintiff, she and the members in sight and who are part of the abolition coalition. She calls her out several times actually throughout the attachments as well as an anti-white person, a teacher, says when she recommends a book that's at the Skokie library for children, she said she's anti-white and the book is anti-white. I mean, there's many things in there that could be read as accusing a teacher of differentiating children by race and not being receptive to white students, which would have an effect on someone's position as a teacher. I appreciate the comment, but even the statement, someone X, Y, Z is anti-white, even that is a statement of opinion. That can be proved. It can be proved. Somebody is anti-white. They're not being called a racist. I know there's cases about racists. That's a different word, a bigot. That's a different word. It's kind of an ambiguous statement. People call people racists and bigots and white supremacists. We're getting a little closer because when you talk about teachers and you say they're anti-white and the person is not white, that could have a tremendous effect on their occupation. Here, there's an allegation that the teacher didn't get a promotion as a result, and they have to prove it, of these statements, which in the letter, as you know, there's commentary as well as the attachment. Every time she attached something that the plaintiff said, there's an explanation that goes in the background and makes various statements about the plaintiff. To me, the question is more about how do we deal with this complaint because on the one hand, if it's per quad, your brief goes through each of those statements and says, you know, there's that specificity in that allegation. You have to go hunting, I guess is what I was, that's what happened when I asked the question about the child abuse, which is a point you made. So the question is, what's pro-quad and what's per se? Is this a mixture of the two? What's your reaction to that? Sure, and your last question kind of ties into the conversation we've been having. The phrase per quad does not appear anywhere in the complaint. I did a word search, it doesn't show up anywhere. So did I. I don't think it's even in the reply brief. No, and so it's a defamatory per se, and because it's defamatory per se, the innocent construction rule applies. So even on statements that, you know, so-and-so, a book is anti-white or so-and-so is segregating, creating a mindset of segregation, you have to apply the innocent construction rule there. Is that person really saying this African-American teacher is a segregationist? That's not what it's saying. Is this person really a communist? That's not what it's saying. I can go through line by line. None of the comments are- Let me ask you, your points are well made, but would you, according to the case law I read, there is no requirement that you have to say per quad or per se. And just because the sentence about per se doesn't mean that they can't be argued per quad. Now, if you're going to argue per quad, of course, you're talking about a different standard of pleading, right? And I agree, there's different standards, but there's no rule that says it, as I could find. I mean, tell me, if you know of something different that you have to do, just because she said per se, it doesn't mean she's prohibited from going per quad, but it does depend on the allegations in the complaint, special damages and so forth. So would you agree? And I'm not aware of any rule that says you have to specifically say this is per quad, but here there wasn't silence. She specifically, the plaintiff specifically alleged these are per se allegations. And so we don't have to figure out, well, she was silent on this issue, what do we do with it? She told us she's making per se and that she's been accused of crimes and the letter does no such thing. And so the court correctly looked at each of the defamatory, alleged defamatory statements. We've provided an analysis for why they were not made. They're taken out of context. They're subject to innocent construction and so forth. And the other side doesn't really even bother to respond to our analysis. I mean, we provided a detailed analysis. There's no response in their brief to this court saying, no, we did make the statement. Here it is. No, this is the defamation according to the law. Here's the case law. You know, these arguments. Is there an innocent construction to the statement, quote, Miss Sebagala segregates District 72 by skin color, unquote? Yeah, look at the sentence before and after. She's saying there is the division created within the community. She's not saying that she's violating the Civil Rights Act by being a segregationist. She's just saying that some of the words and comments and the intimidation, the division created in the community. Well, because she's she's you know, my clients are going to these school board meetings and they're trying to voice their opinion. And she's saying that these people come to these meetings and they're holding faces in their sign and they're holding up their fist and they're accusing us of being racist and white supremacist. They're accusing us of being Alex Jones. That's the division that's being created in the community. And they're not the ones are suing. OK, that that has nothing to do with the allegations. In fact, I mean, the allegations that we have to take as true is that those things you just mentioned are stated as to your client, including Alex Jones copycat. But only one. But that's not that's not the issue. It's the reverse. Right. We're looking at what your clients have said about the plaintiff, not what the plaintiff might have said about your client. All right. Well, that's true. But again, only well-pleaded facts need to be taken as true. And what we're saying is look at the facts. These are not well-pleaded factual allegations. Well, let's take a fact of the anti-white. What is that have to do with protecting kids? Well, I think that the context here is the teaching of critical race theory, and that's a really debated issue. And this is anti-white, a critical rate. We can talk about that separately because that's a separate concept. But this is I'm talking about anti-white. How is that protecting kids when you accuse a teacher of being anti-white? I would say that the issues are actually very related. If you look at teaching of CRT, and I'm not an expert in CRT, but there's there's teaching out their curriculum that says, well, if you're white, you're privileged and you have to repent of your whiteness. And if you're white, then you must have done something bad. And so my client is pointing out this is the notion of critical race theory. Does it say that you have to repent if you're white? Isn't that all just made up? Well, it's not in the record, but that's the context of what my client is saying. Like some of these comments, she perceives her opinion is that they're anti-white and we shouldn't be saying these things about white people or black people anymore. We shouldn't be dividing community into color. Let's all love one another. You know, let's all let's all respect one another. And I'll respect you. You respect me. But don't call me a white supremacist. Don't call me a racist. Don't call me. But this isn't about what she called. This isn't about your client being called names. This is what your client called. So you're talking about respect. Where is the respect of your client throughout the letter in the attachments? Well, the letter simply says here are where is the respect and some of those words used to it about a teacher. I mean, that's what this case is all about when you get down to it. I mean, whether that's whether that satisfies the tests we talk about, you know, that's the question we have to decide. But you just you are the one to mention about respect and calling a teacher anti-white. Isn't that attacking the teacher and not about protecting students? It's about you just said your client doesn't agree with a theory, which I don't know whether that theory is taught or not thought or whatever. People have different opinions of that. Yeah. All the letter it says is she has some questions and she asked the board. I'm sorry that the school officials to determine if anything here is improper. I wouldn't call it a disrespectful letter. I wouldn't call it anything nefarious. Here are the concerns of the community. Here's the letter. Here's what we have observed. Tell us if this is proper or not. I don't find that to be disrespectful. I thought the letter is is is the tone was not disrespectful. It certainly doesn't match the tone that the other side has you know, communicated about my client. And again, these are valid concerns that members of the community had and they have a right to to share those concerns with school officials. Okay. So so let me ask you this. Let's assume that this was done in the spirit of participating in government. You talk about the claim being meritless and you said it's not well pled, but Ms. Weichel made the point and it's one that I agree with to say meritless under the act means the 619 standard. In other words, you would have to prove that the statements that were made were true. And did you do that? Did you do that enough in those pleadings in front of the court to show as a matter of law that the claim is meritless for purposes of the act? That's different from the other aspect of the motion to dismiss. We believe we did. We provided a detailed analysis of every alleged defamatory statement and we were able to show they're not made in the letter. They're not made in the social media post. They're taken out of context that as a matter of law, they're not defamatory or the subject to innocent construction and they respond to that. The other side does not do any sort of analysis on its own to show that our analysis was incorrect. And so if we liberally consider the complaint and consider this to be pled as both per quad and per se, you know, where do you go with that? It wouldn't matter because, again, the defamatory statements were not said or grossly taken out of context, subject to innocent construction with per se pleading. Correct. Okay. But the other what I said still applies and you still have to make the defamatory statement for it to be defamatory. Again, the defamatory statements are, if you read the letter, there's nothing defamatory about it. There's no defamation in there. These are legitimate concerns. You can't make that determination, right? Well, I'm asking you to make that determination. Yes. But, you know, what basis? I mean, that was Justice's question. Where in the record can we make that determination? Well, again, look at each statement one by one. Is this statement actually made? I think we have to not only do that, but look them all together because this is a package. It's a package. It was a letter with attachments. Sure. And look at the attachments, look at the letter, and some of the comments were not made. So let's look at it. Paragraph 466, I think it is, where the letter from the DEC president, the union president, says that Helen Levinson mentions that you have been doing work surrounding equity and that she is trying to ruin your reputation as an educator. Here, the union president said this is defamatory and can impact your profession. Such actions by this person can cause harm to your livelihood, and this should be addressed. That's a union president saying, yeah, an innocent construction, they're saying, oh, that's somebody's opinion that defamation. Well, the union representative is not a lawyer and may not know defamation law. Second of all, there was no adverse employment action here. It wasn't even implied. I thought she said that the complaint says that she didn't get a promotion. I'd have to look at the specific complaint, but again, even that is just a conclusory allegation. No, no, that's a specific fact. Either she did or she didn't. That's a fact. We include facts. That's a fact. It's not a conclusion. I did not get a promotion. That's a fact. And that's a damage, right? That's a specific damage. Well, she doesn't allege there was a promotion available. She doesn't allege. Well, yes, that's the proof. She said I didn't get the promotion, so there must have been something. So again, that would be part of the case, right? Well, again, you have to show liability before damages are even relevant. And again, none of the statements were defamatory. And so we stick by that, and the court looked at every single statement and agreed. And the other side has not responded to that. If anything, they've waived those arguments because they don't show that the statements were made, that they're defamatory as a matter of law, or that the law considers these types of statements defamatory, grossly taken out of context, and innocent construction if we apply the per se rule. Why doesn't this sound more like a personal vendetta than a free speech issue? Your Honor, all I can say is my clients raised legitimate concerns. All my clients did... What were the legitimate concerns? That she felt intimidated and bullied. She provided audio links and links to social... Where are those links? I mean, it seemed more like Levinson was responding to the plaintiff than the plaintiff was responding to Levinson, as far as I could see. Many of the Facebook or whatever they were, attachments, your client spoke up. It wasn't addressed to anybody in particular. Yeah. My client's letter says simply this, we feel intimidated, we feel bullied in the community. Please do something to address this. They don't even ask for her to be terminated. They don't ask for any disciplinary action at all. They simply... Because his letter went to HR. It didn't go to the school board, according to Ms. Weickel. Does that matter? It doesn't. The letter went to the superintendent, the principal, and HR. And then the letter says, please forward this to the school board. So it was sent to everyone. And they're all government... It doesn't matter if they're all government. It also says, put it in her file. Well, tell me that you've done all these things that I've asked. Well, the thing about putting it in the file is simply this. She didn't want her concerns to be swept under the rug, which can often happen. Here are legitimate... So you're saying that everything she says in that letter, you shouldn't be afraid of this, is true, right? So the defense is truth. So if there are some of these statements passed per se or per quad, then the question is whether they're true or not. Everything my client said in the letter is true, but we don't need to find that for purposes of ruling on the motion to dismiss. Because again, the court looked at every defamatory, alleged defamatory statement and correctly found that they were not made, taken out of context, innocent construction. And in some cases, the statements that were made do not qualify as defamatory as a matter of law. That was the court's finding. We provided the case law. The other site has not provided any response to that. Do you agree that... Well, I know you disagree, but tell me why you disagree that the judge did not get mixed up about this, that the plaintiff was a member of the school board. Well, if you look at the first page of the opinion, the judge does correctly recite the facts. He says that the plaintiff is a teacher. The letter was sent to the school board. There is a passing... I'm sorry, the letter was sent to the employer. There is a passing reference to a school board. That was a typo of sorts, but it doesn't matter because when we're dealing with the CPA, the Citizen Participation Act, the word government is defined broadly in that act to include any public authority, the electorate. And so it doesn't matter at the end of the day, whether it was sent to the school board or school officials. There's no legal basis to say that someone is protected by the CPA if they send the complaint to the school board, but not protected if they sent a letter to the school principal. There's nothing in the law that would say that. And so because the word government is defined broadly, it doesn't matter at the end of the day who received the letter, if they were employed by the school or if they were on the school board. That's an irrelevant point. You have two more minutes. I've given you additional time so that you have an equal amount of time as the appellant. And actually, if you need more than two minutes, that's fine as well because the appellant has five minutes. Let me ask you a question. Do you agree that the CPA is not intended to protect those who actually commit torts? I agree with that. That's what San Home holds. Right. San Home holds that if you have a claim, a lawsuit that has merit, the CPA does not apply. The difference here is there's no merit in any of the claims. And we haven't even touched on the intentional inflection of emotional distress claim. They didn't even bother to plead all of the elements there. Appropriation of publicity, those were all frivolous. And the other thing that the courts look at to see whether something is retaliatory is the timing of it. The courts have found that where a lawsuit is proximate in time to the protected speech, that's an indicia of retaliation. And here is only 10 days. The other indicia of retaliation is whether the damages requested are approximated to the alleged harm. But here, they're seeking over 50,000 undisclosed amount punitives. And they haven't even alleged that they were terminated, that they that there was any sort of real adverse employment action. And so there's an indicia of retaliation right there that the courts have. What was the date that the case was filed, if you recall at all? Sorry. The date it was filed, the original complaint? The original complaint was filed, I have that here, on, it would have been 10 days after August 1st. So it would have been September 10th or 9th, something like that. Because a letter from the union representative was dated the 9th. Yes, and the lawsuit was filed right after that. And so that's an indicia of retaliation. Well, actually, it's not, because it shows that somebody's, a union representative is encouraging her to do something. So to me, that would be an indicia, just the opposite. Well, it's a union... You have to look at the context. I guess my answer to you is, context matters. Context matters. And the person that gave that advice is not a lawyer. And so they didn't... It doesn't matter if they're a lawyer or not. A union representative, they have a view. Well, so the union representative may not be a lawyer, but the union representative probably knows a little something about the workplace and advancement in the workplace and, you know, those types of things. And even so, in the 10 days between the lawsuit and the letter, nothing happened. And so the union letter is saying, well, there may be damage to you. We don't know. Just file a lawsuit. They didn't even wait to see if there was any damages. So they just, they rushed into court and that's indicia of retaliation. That's black letter law from the Illinois public court. I believe my time is up. Okay. Five minutes in rebuttal. Ms. Weichel, you had directed us to page one of your complaint and said you pled that your client lost her promotion. I'm looking at the complaint and I don't see that language. Could you tell us exactly what page that is on? You're muted. Ms. Weichel, you're muted. I apologize, Your Honor. I was looking that up while counsel was arguing, just to make sure it's on page 47 of the record, Your Honor. And it specifically states that counsel was no longer eligible for immediate promotion as a result of the letter. Is that in your complaint? That was a question. Yes, it is, Your Honor. It's on page 40 of the record. I'm not talking about the record. I mean, what page of the complaint? That is on the complaint. And to be clear, this is your first amended complaint. Correct. It's not in both complaints, Your Honor, but it is in the original complaint. So is it not in your first amended complaint? It is in the first amended complaint, Your Honor. It is specifically in the complaint. It is paragraph 47, page 21 of the record. And on the first amended complaint, it is... It just sounds kind of vague. You say that the plaintiff was no longer eligible for promotion. I'm not quite sure what that means. Was there some particular position that she had applied for, that she was denied? Or was it sort of more general? I don't really understand what that means. In the immediately preceding paragraph, Your Honor, we allege that my client was considered a future principal. And I think it's important to understand, as Your Honors have been saying, what the context is here. This is a series of social media posts that over the course of weeks, that culminate in a letter to the Human Resources Department, and with a demand that it be put in my client's employee file. This is not just the letter. The letter is the end of a pattern of harassment, state and public statements that damage my client's reputation. Finally, this gets put in her HR file, in her employee, in her personnel file. It costs her a promotion. She loses out on her professional independence. The principal is sent in to watch her. And you're saying, getting back to my question, you're saying that the position that your client lost out on was a position of principal that she was being considered for? And Your Honor, we can, if it is necessary to replete, we can put that. Where is it? I'm still looking. Where is it? You say it's in the complaint. Just tell us the paragraph. It's in paragraph 47, page 21 of the original complaint, Your Honor. Oh, it's not in the amended complaint. The only complaint we have that's now before us is an amended complaint. So it's not in your amended complaint, is that correct? I believe it is in the amended complaint, Your Honor. I don't believe. Is it in the amended complaint? I believe it is in the amended complaint, but I believe it's in the first complaint. I mean, I look at it, 42 is not, paragraph 41 is not. What else do you want to tell us? I think it is also important, Your Honors, to focus on what this issue of merit is. The defendant is essentially arguing that we need to have a trial on the merits under the CPA to determine if there is merit to the complaint before we are entitled to a trial on the merits. And that's not how it works. And even in the Gerrido test, the Gerrido test says that merit is determined not on the basis of a potentially meritorious affirmative defense, but rather if there's a question of fact for trial. And that's satisfied here. How is it satisfied under your complaint? We have to determine what is pro se and what is pro quad? We don't know because you're doing both and there's a different standard. On page 275 of the record, in response to the motion to dismiss, we specifically referenced pleading defamation per quad. And as Your Honors pointed out, it's not in your complaint. It's in our response to the motion to dismiss, Your Honor. It's not in a complaint. But it does not have to be. Whether that be one way or the other, you haven't given us anything in your brief to help us through that, making that determination. So, I mean, a quad has a much different pleading requirement than pro se, which is much higher pleading requirement. That is true, Your Honor, but we do not, under Illinois law, have to plead per se or per quad in the complaint. We can plead both in the alternative, as Your Honors pointed out. But you didn't plead in the alternative, but you're arguing in the alternative. Is that right? In our response to the motion to dismiss the first amended complaint, on page 275 of the record, we specifically stated we were pleading per quad. You didn't plead it, you argued it. Okay. Okay. Any more questions from the panel? Okay. Thank you, counsel. The case was well argued, and we appreciate your zealous advocacy. We will take the matter under advisement and issue a decision in due course.